UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEIL MCNAUGHTON,

      Plaintiff,

   -against-

BILL de BLASIO, *et al.*,

      Defendants.

20-CV-6991 (JMF)

MEMORANDUM OPINION
AND ORDER

JESSE M. FURMAN, United States District Judge:

  Plaintiff Neil McNaughton brings this *pro se* action, for which the filing fee has been paid, alleging that Defendants violated his federal constitutional and statutory rights, as well as his rights under state law.  The Court dismisses the complaint for the reasons set forth below.

## STANDARD OF REVIEW

  The Court has the authority to dismiss a complaint, even when the plaintiff has paid the filing fee, if it determines that the action is frivolous.  *See, e.g.*, *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (per curiam) (citing *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995) (per curiam) (holding that the Court of Appeals has inherent authority to dismiss frivolous appeal)).  Additionally, the Court is obligated to dismiss if it lacks subject-matter jurisdiction.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).  At the same time, the Court is also obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and to interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). Because Plaintiff is an attorney, however, *see* ECF No. 1 ("Compl."), ¶ 16, he is not entitled to the special solicitude usually granted to *pro se* litigants.  *See Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[A] lawyer representing himself ordinarily receives no such solicitude at all.")

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. A complaint states a claim for relief if the claim is plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To review a complaint for plausibility, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the pleader's favor. *See id.* But the Court need not accept "[t]hreadbare recitals of the elements of a cause of action," which are essentially legal conclusions. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible — not merely possible — that the pleader is entitled to relief. *See id.*

## BACKGROUND

Plaintiff brings this action against New York City Mayor Bill de Blasio; New York City Police Department ("NYPD") Commissioner Dermot Francis Shea; New York City Parks and Recreation Commissioner Mitchell J. Silver; Century Management Services; 5 West 14 Owners Corp.; Norma Bellino; Lisa Golub; Galen J. Criscione and his law firm; Fern Lee; the Estate of Laura G. McNaughton; David L. Moss and his law firm; the City of New York; the NYPD; the New York City Department of Parks and Recreation; and 600 John and Jane Does. Compl. ¶¶ 72-88. The crux of Plaintiff's 74-page complaint, which is filled with extraneous discussions,[1] is that the NYPD is enlisting parents and their children in an elaborate scheme to lure him to commit pedophilic acts. He previously filed an action in this Court in which he alleged that his now-

---

[1] For example, the first 25 pages of the complaint are largely devoted to Plaintiff's description of what he terms "the Nazi disease": "[W]hat is usually euphemistically called the 'silent treatment,' but which actually is turning the victim into a pariah in a given social situation, is the mechanism by which most people have been socialized as children into becoming Nazis, and the means by which they usually demonstrate their Nazi status." Compl. ¶ 20.

deceased sister falsely reported to the Montclair, New Jersey, Police Department and the NYPD that Plaintiff was a pedophile, causing both departments to engage in a "baiting" campaign in which the police "paraded [underage girls] before him while he [wa]s under surveillance in an attempt to elicit behavior that could subject him to arrest."[2]  *McNaughton v. de Blasio*, No. 14-CV-0221, 2015 WL 468890, at *1 (S.D.N.Y. Feb. 4, 2015) (alterations in original) (quoting the amended complaint) , *aff'd*, 644 Fed. App'x 32 (2d Cir. 2016).[3]

In this action, Plaintiff asserts that the "persistent police stalking and harassment that I complained about in my action before Judge Falla [sic] have continued until the present day in a significantly increased manner."  Compl. ¶ 162.  He alleges that private individuals are acting in conspiracy with the police to "entrap" him or are calling the police subsequent to Plaintiff's taking pictures of their children.  *See, e.g.*, *id.* ¶ 186 (describing an incident in Washington Square Park where someone "actually had the gall to show up with a Park Police officer" to remove Plaintiff from the park "on the ground that [Plaintiff] was taking pictures of children").  Plaintiff specifically claims that he is now being "stalk[ed]" by young children at the behest of the police.  *Id.* ¶¶ 62-64.[4]

This campaign of "harassment," *id.* ¶ 65, extends to the management of Plaintiff's apartment building and the members of the building co-op.  For example, the co-op has arranged incidents of

---

[2]  Plaintiff maintains that he has had "absolutely no contact with children in [his] life" and does not "attempt to talk to or to otherwise interact with any of the children stalking [him]."  *Id.* ¶ 64.

[3]  Judge Failla dismissed Plaintiff's prior action, among other reasons, for failure to state a claim and on the grounds that many of Plaintiff's factual allegations were simply implausible.  *See id.* at *6-16.

[4]  Plaintiff writes: "From 2011 until perhaps 2014, the children were perhaps 80% Asian and usually girls in the 12-13 year old age group, although there were always a few older or younger, and throughout the entire nine years perhaps only a few boys.  In about 2016 or 2017, the composition of the bait changed to older, more developed girls.  Then starting in 2018 or 2019 and continuing until the present day, the stalking involves almost exclusively babies in strollers and very young children, with only an occasional teenager."  *Id.* ¶ 63.

"stroller harassment," in which Plaintiff has been "stalked within the building by women pushing strollers, particularly as [he's] leaving [his] apartment." *Id.* ¶ 156. In another incident, Plaintiff was sitting in the basement laundry room "when a woman pushing a baby stroller with two children came into the room. 'Stalking is a crime, ma'am[,]' [he] told her as she came in." *Id.* ¶ 157. When Plaintiff took a picture of the woman and her stroller, *id.*, the woman "screamed in horror" at Plaintiff and then left the room, *id.* ¶ 158. A few days later Plaintiff received a letter under his door from the co-op president, informing Plaintiff that the woman filed a complaint against him and giving him "a shameless lecture on co-op courtesy." *Id.* ¶ 159.

Plaintiff also includes allegations of "co-op . . . harassment," *id.* ¶ 147, which appear to arise from damage to Plaintiff's apartment or disagreements he has with building management. For example, he alleges that building "support staff" enter his apartment at night, delete pictures from his camera, and move around his living room furniture. *Id.* ¶ 150. In March 2017, "support staff" entered his apartment and "damaged [his] bathroom plumbing"; as a result, Plaintiff has "not been able to take a hot shower for over three years." *Id.* ¶ 151.

Numerous local businesses have also been "involved in some form of harassment," mostly at the instigation of police. *Id.* ¶ 162. Examples of such harassment include "phony pedo traps where a young child would be present in a situation where there [sic] are almost never present," such as barbershops, and "minor physical assaults" such as "overcooking the udon noodles or putting too much hot spice in the soup." *Id.* ¶ 163.Plaintiff's complaint also includes extensive allegations of fraud and malpractice by two attorneys whom he hired "to obtain certain telephone records for two telephone numbers," *id.* ¶ 106, and "to help [him] have [his] apartment fingerprinted and to represent [him] in an action against [his] co-op," *id.* ¶ 137.

He brings claims under the First, Fourth, and Fourteenth Amendments, for defamation,[5] trespassing, "interference with [Plaintiff's] covenant of quiet enjoyment," intentional infliction of emotional distress, fraud, "fraud in the inducement," "recission," and "attorney malpractice." *Id.* ¶¶ 199-231.

## DISCUSSION

The Court construes Plaintiff's federal constitutional claims as arising under 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)).

**A.      Claims Against the New York City Police Department and the New York City Department of Parks and Recreation**

Plaintiff's claims against the New York City Police Department and the New York City Department of Parks and Recreation must be dismissed because an agency of the City of New York is not an entity that can be sued. *See* N.Y. City Charter ch. 17, § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency.").

---

[5]     Plaintiff's defamation claims are based on his assertion that "the presence of the young girls or, more recently, stroller stalkers is a public accusation that [he is] a pedophile," and that "the NYPD or someone at their behest are contacting stores and arranging phony 'traps' with underage children or babies in strollers, and these 'traps' are understood by the store employees to state that [Plaintiff is] a pedophile." *Id.* ¶¶ 194, 196.

**B.        Claims Against Mayor de Blasio, Commissioner Shea, and Commissioner Silver**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing the defendant's direct and personal involvement in the alleged constitutional deprivation.  *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights.  *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). An individual defendant may have been personally involved in a Section 1983 violation if:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.[6]

Plaintiff does not allege any facts showing how Mayor de Blasio, Commissioner Shea, or Commissioner Silver was personally involved in the events underlying his claims.  Plaintiff's claims against these defendants are therefore dismissed for failure to state a claim on which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[6]        "Although the Supreme Court's decision in [*Iqbal*, 556 U.S. 662,] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," the Second Circuit has not yet decided that issue.  *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013); *see also Lombardo v. Graham*, 807 Fed. App'x 120, 124 n.1 (2d Cir. 2020).

### C. Claims Against the City of New York

When a plaintiff sues a municipality under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs. of New York,* 436 U.S. 658, 692 (1978))); *Cash v. Cty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a Section 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Bd. of Cty. Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 403 (1997); *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012).

Plaintiff fails to allege facts suggesting that the City of New York has a policy, custom, or practice that has caused a violation of his constitutional rights. The Court therefore dismisses his claims against the City of New York. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### D. Claims Against Century Management Services; 5 West 14 Owners Corp.; Norma Bellino; Lisa Golub; Galen Criscione; Criscione-Ravela LLP; Fern Lee; Estate of Laura G. McNaughton; David L. Moss; David L. Moss & Associates, LLC

A claim for relief under Section 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties are therefore not generally liable under the statute. *See Sykes v. Bank of America*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties . . . ."

7

(quoting *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 941 F.2d 1292, 1295-96 (2d Cir. 1991)). Moreover, absent special circumstances suggesting concerted action between an attorney and a state representative, *see Nicholas v. Goord*, 430 F.3d 652, 656 n.7 (2d Cir. 2005) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)), the representation of a defendant by counsel in state proceedings does not constitute the degree of state involvement or interference necessary to establish a claim under Section 1983, regardless of whether that attorney is privately retained, court-appointed, or employed as a public defender, *see Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 318-19 (1981)); *see also Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (holding that a legal aid organization ordinarily is not a state actor for purposes of Section 1983). As Defendants Century Management Services, 5 West 14 Owners Corp., Norma Bellino, Lisa Golub, Galen Criscione, Criscione-Ravela LLP, Fern Lee, Estate of Laura G. McNaughton, David L. Moss, and David L. Moss & Associates, LLC, are private parties who do not work for any state or other government body, Plaintiff fails to state a claim against these Defendants under Section 1983.

**E.     Frivolousness**

To the extent Plaintiff seeks to assert any other federal claims against Defendants, the Court dismisses those claims as frivolous. A claim is frivolous when "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Twombly*, 550 U.S. 544 ; *see also Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ("An action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . ; or (2) the claim is based on an indisputably meritless legal theory." (internal quotation marks omitted) (quoting *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam))); *Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible").

Whatever role Plaintiff believes Defendants have played in his life, his allegations are simply not plausible and there is no legal theory on which he can rest his claims. The Court therefore dismisses any remaining federal claims Plaintiff may be asserting as frivolous. *See Fitzgerald*, 221 F.3d at 363-64 (citing *Pillay*, 45 F.3d at 16-17 (holding that the Court of Appeals has inherent authority to dismiss a frivolous appeal)).

**F.     Supplemental Jurisdiction**

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over any state-law claims Plaintiff may be asserting. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**G.     Leave to Amend**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

## CONCLUSION

For the foregoing reasons, the Court dismisses Plaintiff's complaint for failure to state on claim on which relief may be granted and as frivolous and declines to exercise supplemental jurisdiction over any state-law claims Plaintiff may be asserting. 28 U.S.C. § 1367(c)(3). Additionally, the Court denies Plaintiff's requests for the issuance of summonses.  *See* ECF Nos. 3-18.  The Clerk of Court is directed to mail a copy of this Memorandum Opinion and Order to Plaintiff, to note such service on the docket, and to close the case.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:   October 8, 2020
         New York, New York

_____
JESSE M. FURMAN
United States District Judge